UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTOPHER HAMLET and BARBARA
HAMLET, et al.,

                         Plaintiffs,

- against-

GREAT LAKES REINSURANCE (UK) PLC,

                         Defendant.
------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
**13 CV 5941 (SJF)(GRB)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ DEC 03 2013 ★

**LONG ISLAND OFFICE**

On October 28 2013, plaintiffs Christopher Hamlet and Barbara Hamlet (collectively, Hamlet) and plaintiff Doreen Defficy ("Defficy") commenced this action against defendant Great Lakes Reinsurance (UK) PLC ("defendant") pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), seeking to recover: (1) damages resulting from defendant's purported breach of contract, i.e., its failure to pay the full amount of their respective claims under separate insurance policies issued to them by defendant; and (2) compensatory, consequential, punitive and/or treble damages for defendant's purported fraudulent misrepresentation and inducement, breach of the implied covenant of good faith and fair dealing and violations of Sections 349 and 350 of the New York General Business Law. For the reasons set forth below, the fraudulent misrepresentation and inducement, breach of the implied covenant of good faith and fair dealing and New York General Business Law claims are *sua sponte* dismissed and Defficy's remaining claim is *sua sponte* severed from this action pursuant to Rule 21 of the Federal Rules of Civil Procedure and dismissed without prejudice.

1

I. Background

   A. Factual Background

The complaint alleges, *inter alia*: (1) that defendant issued individual property insurance policies to Hamlet and Defficy covering losses to their respective dwellings and personal property, (Compl., ¶¶ 5-7); (2) that Hamlet and Defficy paid all of the premiums due on their respective policies, (Compl., ¶¶ 6-7); (3) that as a result of "Superstorm Sandy" ("the Storm"), Hamlet and Defficy "sustained substantial losses and wind damage to their insured properties," (Compl., ¶¶ 8-9); (4) that Hamlet and Defficy reported and properly submitted claims for wind damage to defendant under their respective policies, (Compl., ¶ 10); (6) that defendant "improperly adjusted and denied at least a portion of [Hamlet's and Defficy's] claims without an adequate investigation," (Compl., ¶ 11), "unjustifiably refused to perform its obligations under the property insurance Policies and wrongfully denied payment in the full amount of [Hamlet's and Defficy's] claims," (Compl., ¶ 12); (7) that Hamlet and Defficy retained independent experts and consultants to evaluate the damages sustained to their respective properties and "thoroughly documented" and submitted their respective losses to defendant for review, (Compl., ¶ 13); and (8) that as a result of defendant's failure to pay the full amount of Hamlet's and Defficy's respective claims, they have been unable "to properly and/or completely repair the damages to their [respective] properties," or the repairs were delayed, "caus[ing] additional damages to [them] * * *," (Compl., ¶ 14).

B.  Procedural History

On October 28, 2013, Hamlet and Defficy commenced this diversity action against defendant asserting four (4) causes of action for: (1) breach of contract, seeking to recover the actual damages they sustained as a result of defendant's failure to pay the full amount of their respective claims under their respective insurance policies, as well as compensatory damages, (Compl., ¶¶ 15-19); (2) fraudulent misrepresentation and inducement, seeking compensatory, consequential and punitive damages based upon, *inter alia*, defendant's purported "misrepresentations about its fairness and willingness to pay the full amount of claims under the[ir] [respective] Policies," (Compl., ¶¶20-26); (3) breach of the implied covenant of good faith and fair dealing, seeking compensatory, consequential and punitive damages against defendant based upon, *inter alia*, defendant's purported denial of their respective claims, misrepresentation that their respective claims were not covered under their respective insurance policies, unreasonable investigation of their respective claims and "refus[al] to accept the facts and documentation supporting [their respective] claims * * *," (Compl., ¶¶ 27-36); and (3) violations of Sections 349 and 350 of the New York General Business Law, seeking compensatory, consequential and treble damages based upon defendant's purportedly "deceptive acts or practices in conducting the business of insurance and the furnishing of insurance services in New York * * *," (Compl., ¶¶ 37-40).

3

II.  Discussion

   A.  Fraudulent Misrepresentation and Inducement Claim

In their second claim for relief, Hamlet and Defficy allege, *inter alia*: (1) that "prior to issuing [their respective] Policies, [defendant] * * * fraudulently misrepresented coverage * * * in order to induce [them] * * * to purchase insurance," (Compl., ¶ 22); (2) that defendant "made misrepresentations about its fairness and willingness to pay the full amount of claims under the Policies, when its actual intention and practice was to unreasonably deny payment for any or all of the proceeds due," (id.); (3) that defendant "fraudulently induced and misled [them] by promising to pay claims in good faith and according to the Policy terms and conditions when [it] had no intention to do so," in order to "further its own economic interests," (Compl., ¶ 23); (4) that defendant "knowingly misrepresented property coverage and claims services," (Compl., ¶ 24); and (5) that they "reasonably relied on the misrepresentations and false and misleading information from [defendant] to their detriment in deciding to purchase their [respective] Policies," (Compl., ¶ 25).

"To state a claim for fraudulent misrepresentation under New York law[1] 'a plaintiff

---

[1] By pleading a claim under New York law, i.e., plaintiffs' fourth claim for relief alleging violations of Sections 349 and 350 of the New York General Business Law, plaintiffs impliedly concede that New York law applies to this case. Nonetheless, since jurisdiction in this case is premised upon diversity of citizenship, the choice-of-law rules of the state in which this Court sits, i.e., New York, are applied. See Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012) ("A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state.") With respect to tort claims, "[i]n New York, 'the relevant analytical approach to choice of law in tort actions' is the 'interest analysis.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 n. 5 (2d Cir. 1997) (quoting Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (N.Y. 1985)); see also White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006). Under the "interest analysis," "the law of the jurisdiction having the greatest

must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" Eternity Global Master Fund Limited v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 186-87 (2d Cir. 2004) (quoting Banque Arabe et Internationale D'Investissement v. Maryland National Bank, 57 F.3d 146, 153 (2d Cir. 1995)); see also Manning v. Utilities Mutual Ins. Co., Inc., 254 F.3d 387, 400 (2d Cir. 2001) ("Under New York law, the essential elements of a fraud claim include representation of a material existing fact, falsity, scienter, deception, and injury." (quotations, italics and citation omitted)). False statements, even if intentionally made, merely indicating an intent to perform under the parties' contract are "not sufficient to support a claim of fraud under New York law." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19-20 (2d Cir. 1996); see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007) ("New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."); Wall v. CSX

---

interest in the litigation will be applied." Lazard Freres, 108 F.3d at 1539 n. 5 (quoting Schultz, 65 N.Y.2d 189, 491 N.Y.S.2d at 95); see also GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." White Plains Coat, 460 F.3d at 284 (quoting Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)). Since, *inter alia*, Hamlet and Defficy, and their respective properties, are located in New York and all of the damages were suffered in New York, New York clearly has the greater interest in regulating the conduct in question. Accordingly, New York law applies to Hamlet's and Defficy's fraudulent misrepresentation and inducement claim, as well as to their breach of the implied duty of good faith and fair dealing claims.

Transportation, Inc., 471 F.3d 410, 416 (2d Cir. 2006) ("[G]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." (quoting New York University v. Continental Ins. Co., 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y. 1995)); Manning, 254 F.3d at 401 (holding that a mere "statement of intent to perform under [a] contract[] cannot constitute fraud in New York.")

"To maintain a claim of [fraudulent inducement of a contract], a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, * * * or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, * * *" or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, 98 F.3d at 20; see also Wall, 471 F.3d at 416 ("New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced."); TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 91 (2d Cir. 2005) ("[I]n a situation where a defendant fails to disclose an intention not to perform a promise in the future, one of the ways a plaintiff can maintain a fraud claim under New York law is by also demonstrating a fraudulent misrepresentation collateral or extraneous to the contract. * * * However, the non-disclosure of collateral aims * * * do [sic] not constitute actionable fraudulent misrepresentations collateral or extraneous to the contract. * * * [A]llegations about defendants' states of minds [sic] used to support the contention that they intended to breach the contract * * * [are not distinct fraudulent misrepresentations]." (quotations, brackets and citations omitted)); Manning, 254 F.3d at 400 (holding that an insured's fraud claim against an insurer "can proceed if it sufficiently alleges that [the insurer] engaged in

fraud collateral or outside the contract, which was intended to defeat the contract." (quotations and citations omitted)).

District courts have inherent authority to dismiss meritless claims *sua sponte*, even if the plaintiffs have paid the filing fee. See Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000) (holding that the district court has the power to dismiss a frivolous complaint *sua sponte* even if the plaintiff has paid the filing fee); see also Zahl v. Kosovsky, 471 Fed. Appx. 34, 37 (2d Cir. Mar. 27, 2012), cert. denied, 133 S. Ct. 1460, 185 L.Ed. 2d 363 (2013) ("A district court has inherent authority to dismiss meritless claims *sua sponte*, even where a plaintiff has paid the filing fee."); Zapolski v. Federal Republic of Germany, 425 Fed. Appx. 5, 5 (2d Cir. Apr. 14, 2011) (accord).

The complaint does not allege that defendant owed Hamlet and Defficy a legal duty separate from its duty to perform under their respective insurance policies; the only misrepresentation alleged relates to defendant's future intent to perform under its contracts with Hamlet and Defficy, i.e., to pay the full amount of their respective claims under their respective insurance policies and, thus, it is not collateral or extraneous to the contract; and Hamlet and Defficy do not seek special damages. Accordingly, the fraudulent misrepresentation and inducement cause of action is *sua sponte* dismissed as meritless.

B.    Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

In their third claim for relief, Hamlet and Defficy allege, *inter alia*: (1) that "[b]y wrongfully denying payments to [them], [defendant] breached the[ir] [respective] Policies,

causing damage, * * *" (Compl., ¶ 30); (2) that defendant "breached or will breach its duty to deal fairly and in good faith to the extent that it has engaged or will engage in conduct calculated to further its own economic interests at the[ir] expense * * *," (Compl., ¶ 31); (3) that defendant "breached its duty to" them by (a) "misrepresenting * * * that [their respective] claims were not covered under the Policies even though the damage resulted from a covered cause of loss," (b) unreasonably investigating their respective claims; and (c) "refusing to accept the facts and documentation supporting [their respective] claims prepared by [them] and by experts on their behalf," (Compl., ¶ 32); (4) that defendant's "conduct constitutes a pattern of unfair dealing and unfair settlement practices directed at [them] and the public at large," (Compl., ¶ 33); (5) that defendant "had economic incentive to disregard its obligation to act in good faith and deal fairly with its policyholders, including [Hamlet and Defficy], regarding large-dollar claims," (Compl., ¶ 34); and (6) that defendant "has breached, or will breach, the duties of good faith and fair dealing owed to [them], and to the public at large, by other acts and omissions of which [they] are presently unaware," (Compl., ¶ 35). Hamlet and Defficy seek "compensatory and consequential damages and costs and * * * punitive damages in an amount [they] may prove at trial * * *, all costs associated with recovering, repairing and/or replacing the damaged property * * *." (Compl., ¶ 36).

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) (quoting Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992)); see also Fishoff v.

Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011) ("A breach of the duty of good faith and fair dealing is considered a breach of contract.") "New York law * * * does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris, 310 F.3d at 81; see also Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) ("To avoid redundancy, [c]laims of breach of the implied covenant [of good faith and fair dealing] must be premised on a different set of facts from those underlying a claim for breach of contract." (quotations and citations omitted)). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." Cruz v. FXDirectDealer, LLC (FXDD), 720 F.3d 115, 125 (2d Cir. 2013). Since Hamlet's and Defficy's claims for breach of the implied covenant of good faith and fair dealing and breach of contract rest upon the same alleged conduct by defendant, the breach of the implied covenant of good faith and fair dealing cause of action is *sua sponte* dismissed with prejudice as redundant.

Nor does the complaint state a claim for bad faith denial of coverage, which requires the following:

> "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature. . .; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally."

Sichel v. UNUM Provident Corp., 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002) (quoting New York University, 87 N.Y.2d at 316, 639 N.Y.S.2d 283); see also Woodhams v. Allstate Fire and Cas. Co., 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), aff'd, 453 Fed. Appx. 108 (2d Cir. Jan. 3, 2012)

9

("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled, nor does it recognize an independent cause of action for bad faith denial of insurance coverage." (quotations and citation omitted)); Polidoro v. Chubb Corp., 386 F. Supp. 2d 334, 338 (S.D.N.Y. 2005) ("Plaintiff's claim for bad-faith conduct in handling insurance claims is not legally-cognizable under New York law."); United Capital Corp. v. Travelers Indem. Co. of Illinois, 237 F. Supp. 2d 270, 277 (E.D.N.Y. 2002) ("Under New York law, no independent tort claim exists for the bad faith denial of insurance coverage.") "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court * * * is to identify a tort independent of the contract." New York Univ., 87 N.Y.2d at 316, 639 N.Y.S.2d 283; see also Sichel, 230 F. Supp. 2d at 329 (dismissing bad faith denial of coverage claim because the plaintiff did not allege a tort independent of the contract); Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116, 123-24 (S.D.N.Y. 2002) (dismissing bad faith denial of coverage claim because New York does not recognize bad faith denial of coverage as an independent tort). Since Hamlet and Defficy do not allege a tort independent of their respective contracts with defendant, i.e., that defendant owed them a duty of care distinct from its contractual obligations or engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations, see New York University, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283; see also Wrap-N-Pack, Inc. v. Kaye, 528 F. Supp. 2d 119, 124-25 (E.D.N.Y. 2007); Harary v. Allstate Ins. Co., 983 F. Supp. 95, 100 (E.D.N.Y. 1997), the complaint fails to state a claim for bad faith denial of coverage.[2]

---

[2] However, Hamlet and Defficy may be able to recover consequential damages on their breach of contract claim beyond the limits of their respective policies based upon defendant's purported bad faith. See, e.g. Acquista v. New York Life Ins. Co., 285 A.D.2d 73, 730 N.Y.S.2d

C.  New York General Business Law Claims

The fourth cause of action in the complaint alleges, *inter alia*, that defendant violated Sections 349 and 350 of the New York General Business Law by "engag[ing] in deceptive acts or practices in conducting the business of insurance and the furnishing of insurance services in New York as described in the facts and allegations set forth in the paragraphs above." (Compl., ¶ 39).

Section 349(a) of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." Section 349(h) of the New York General Business Law provides, in relevant part, that:

> "any person who has been injured by reason of any violation of this section may bring * * * an action to recover his actual damages or fifty dollars, whichever is greater * * *. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. * * *"

Section 350 of the New York General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." "The standard for recovery under General Business Law Section 350, while specific to false advertising, is otherwise identical to Section 349[,]" Oscar v. BMW of North America, LLC, 274 F.R.D. 498, 512 (S.D.N.Y. 2011) (quoting Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190, 1195 n. 1 (N.Y. 2002)); see also Krasnyi Oktyabr, Inc. v. Trilini

---

272 (App. Div. 1ˢᵗ Dept. 2001) (holding that a claim alleging bad faith conduct on the part of an insurer cannot stand as a distinct tort cause of action, but "may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract."); Sichel, 230 F. Supp. 2d at 329. I make no determination at this stage of the proceedings as to the viability of such a claim.

11

Imports, 578 F. Supp. 2d 455, 470 (E.D.N.Y. 2008), with the exception that Section 350, unlike Section 349, requires a plaintiff to also "demonstrate reliance on the allegedly false advertising." Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); see also Merck Eprova AG v. Brookstone Pharmaceuticals, LLC, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013) ("A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance.")

"To state a claim under Section 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009); see also Wilson v. Northwestern Mutual Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010); Leider, 387 F. Supp. 2d at 292 ("To state a claim for deceptive practices under either [Section 349 or Section 350], a plaintiff must show: (1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement." (quotations and citation omitted)). Thus, in order to state a claim under either Section 349 or Section 350, plaintiff must allege actual injury. See Lebowitz v. Dow Jones & Co., Inc., 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2012), aff'd, 508 Fed. Appx. 83 (2d Cir. Jan. 28, 2013); Vaughn v. Consumer Home Mortgage Co., Inc., 470 F. Supp. 2d 248, 271 (E.D.N.Y. 2007), aff'd, 297 Fed. Appx. 23 (2d Cir. Oct. 17, 2008); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995).

"Although a monetary loss is a sufficient injury to satisfy the requirement under Section 349, that loss must be independent of the loss caused by the alleged breach of contract."

Spagnola, 574 F.3d at 74; see also Servedio v. State Farm Ins. Co., 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012), aff'd, — Fed. Appx.—, 2013 WL 4504609 (2d Cir. Aug. 26, 2013); In re Cablevision Consumer Litigation, 864 F. Supp. 2d 258, 267 (E.D.N.Y. 2012); Fleisher, 858 F. Supp. 2d at 304. Hamlet and Defficy do not allege any specific conduct by defendant that is purportedly deceptive. Rather, they expressly refer to the "facts and allegations" set forth in the preceding paragraphs of the complaint to be the deceptive acts and practices in which defendant purportedly engaged. "[T]wo claims predicated on the same conduct are likely to involve similar injury." Fleisher, 858 F. Supp. 2d at 305. Indeed, Hamlet and Defficy do not allege any loss allegedly sustained by them as a result of defendant's allegedly deceptive acts, practices or advertisement, much less one that is independent of the loss caused by defendant's purported breach of contract. Since Hamlet and Defficy have not alleged an actual or cognizable injury, their fourth claim for relief, alleging violations of Sections 349 and 350 of the New York General Business Law, is *sua sponte* dismissed for failure to state a claim.

D.   Permissive Joinder of Plaintiffs

Rule 20(a)(1) of the Federal Rules of Civil Procedure permits the joinder of multiple plaintiffs in an action if:

> "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

In determining whether claims relate to, or arise out of, the same "transaction" or "occurrence" under Rule 20(a), "courts are to look to the logical relationship between the claims

13

and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" Kalie v. Bank of America Corp., — F.R.D.—, 2013 WL 4044951, at * 3 (S.D.N.Y. Aug. 9, 2013) (quoting United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979)); see also Abraham v. American Home Mortgage Servicing, Inc., — F. Supp. 2d —, 2013 WL 2285205, at * 3 (E.D.N.Y. May 23, 2013) (Rule (20)(a)(1)); Peterson v. Regina, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) (Rule 20(a)(2)); Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 166 (S.D.N.Y. 2009) (Rule 20(a)(2)); Barnhart v. Town of Parma, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (Rule 20(a)(1)). Plaintiffs bear the burden of demonstrating that joinder is proper under Rule 20(a). Kalie, —F.R.D.—, 2013 WL 4044951, at *5; Deskovic, 673 F. Supp. 2d at 159.

Hamlet's and Defficy's claims in this case are not properly joined pursuant to Rule 20(a)(1) of the Federal Rules of Civil Procedure. Indeed, judicial economy and fairness dictate that the claims under each distinct insurance policy issued by defendant be tried separately. In order for a plaintiff's right to relief to relate to, or arise out of, a transaction or occurrence for purposes of Rule 20(a), the "transaction" or "occurrence" must relate to the contract purportedly breached by defendant, i.e., the insurance policy. Hamlet and Defficy separately purchased, and were issued, two (2) distinct insurance policies from defendant at different times; each of those insurance policies relates to a separate and distinct property; Hamlet and Defficy separately performed their obligations under their respective insurance policies, e.g., paid the premiums and submitted claims thereunder; and Hamlet and Defficy seek to recover their actual damages as a result of defendant's purported breach of their respective insurance policies, i.e., either defendant's outright denial of their respective claims or its failure to pay the entire amounts of

their claims. The fact that Hamlet's and Defficy's separate properties, for which they made distinct claims under the separate insurance policies issued to them by defendant, all sustained damage as a result of the same storm is immaterial for purposes of Rule 20(a) of the Federal Rules of Civil Procedure, i.e., Hamlet's and Defficy's right to relief under their respective insurance policies issued by defendant is not affected by the fact that the damage to their respective properties may have been occasioned by the Storm. Moreover, defendant will likely have different justifications for denying and/or limiting Hamlet's and Defficy's claims. Since the two (2) insurance policies upon which Hamlet and Defficy claim a right to relief do not relate to, or arise out of, the "same transaction, occurrence, or series of transaction or occurrences," they are not properly joined in this action pursuant to Rule 20(a) of the Federal Rules of Civil Procedure.

E.  Misjoinder

Rule 21 of the Federal Rules of Civil Procedure provides, in relevant part, that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Thus, "[i]f a court concludes that [parties] have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever [those] parties * * * from the action." Kalie, — F.R.D.—, 2013 WL 4044951, at * 3 (quoting Deskovic, 673 F.Supp.2d at 159-60); see also Adams v. US Bank, NA, No. 12 CV 4640, 2013 WL 5437060, at * 4 (E.D.N.Y. Sept. 27, 2013).

In determining whether to sever parties improperly joined under Rule 20(a), courts generally consider, in addition to the factors set forth in Rule 20(a), "whether settlement of the

claims or judicial economy would be facilitated; [] whether prejudice would be avoided if severance were granted; and [] whether different witnesses and documentary proof are required for the separate claims." Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 333 (S.D.N.Y. 2013) (quoting Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011)). "A court should consider whether severance will 'serve the ends of justice and further the prompt and efficient disposition of litigation.'" Crown Cork, 288 F.R.D. at 332 (quoting T.S.I. 27, Inc. v. Berman Enters., Inc., 115 F.R.D. 252, 254 (S.D.N.Y. 1987)); see also In re Ski Train Fire in Kaprun, Austria, on November 11, 2004, 224 F.R.D. 543, 546 (S.D.N.Y. 2004).

Joinder of the claims of three (3) plaintiffs involving two (2) separate insurance policies does not serve the interest of judicial economy. There will be little, if any, overlapping discovery and Hamlet's and Defficy's respective breach of contract claims will require distinct witnesses and documentary proof. "The interest in economy is affirmatively disserved by forcing these many parties to attend a common trial at which these separate, unrelated claims * * * would be resolved." Kalie, — F.R.D.— , 2013 WL 4044951, at * 6. Furthermore, settlement of the claims is likely to be facilitated if the claims relating to two (2) separate insurance policies are litigated separately. See Adams, 2013 WL 5437060, at * 4. In addition, "[a] joint trial could lead to confusion of the jury and thereby prejudice [the] defendant[]." Kalie, — F.R.D.—, 2013 WL 4044951, at * 6 (quotations and citation omitted). Accordingly, Defficy's remaining claim is *sua sponte* severed pursuant to Rule 21 of the Federal Rules of Civil Procedure and dismissed without prejudice to commencing a separate action with respect to the insurance policy issued to her by defendant.

III. Conclusion

For the reasons stated herein, the second, third and fourth claims for relief in the complaint are *sua sponte* dismissed in their entirety and Defficy's remaining claim is *sua sponte* severed pursuant to Rule 21 of the Federal Rules of Civil Procedure and dismissed without prejudice to commencing a separate action with respect to the insurance policy issued to her by defendant.

SO ORDERED.

                                          s/ Sandra J. Feuerstein
                                          _____
                                          SANDRA J. FEUERSTEIN
                                          United States District Judge

Dated: December 3, 2013
        Central Islip, N.Y.